NicholsoN, C. J.,
delivered the opinion of the Court.
The bill in this case is filed with a double aspect; first, for a construction of the will of Samuel M. Andrews, husband of complainant, alleging that by a proper construction she is entitled to his entire *9 estate, real and personal; and second, that site was prevented, by tbe fraudulent representations of tbe executors, from dissenting from tbe will, and praying for leave now to do so.
Tbe executors answer and controvert ber construction of tbe will, and deny tbat tbey made any misrepresentations by wbicb sbe was influenced in failing to dissent from tbe will.
Tbe testator died in March, 1860, and bis will was proven- and tbe executors qualified in April, 1860.
By tbe first clause, tbe testator directs bis funeral expenses and debts to be paid.
By tbe second, be expresses bis earnest desire and primary intention tbat bis child or children should have a good education, and to tbat end be desires all of bis estate, real and personal, to remain in tbe bands of bis executors, to be managed and controlled for tbe benefit of bis child or children.
By tbe third, be directs tbat bis executors appropriate as much of tbe yearly income of bis estate as tbey may think proper and necessary to tbe support, maintenance, and education of bis child or children; and tbat tbey pay tbe balance to bis beloved wife, Mary E. Andrews, during ber natural life or widowhood; at ber death or marriage, tbe whole of said estate and income to vest immediately in bis child or children.
Tbe fourth clause is as follows: “If any chilcl or children of mine should die under twenty years of age, leaving no child or children, or tbe descendents of such, and my wife be married or dead, *10 I will that the entire interest of such child shall go to his or her surviving brother or sister, or the descenclents of such; or, if there be no ' brother or sister, nor the descendents of such, then my entire estate shall go back to my brothers, or their issue if they be dead, and to the heirs of the body of my sister, Jane C. Allen, the children taking the shares their parents would have taken if living.”
Ly the fifth clause he gives discretionary powers to his executors in the management of his estate.
By the sixth clause he desires his executors to give to any child or children, as they may become of age, such portions of his estate as they deem proper, so that in the final division they be made equal.
By the seventh clause he desires his executors to have his child or children well educated, and to that end he desires his executors to have full control over them; that they investigate and superintend their moral training, and to do any thing with or for them that they may deem it proper to do for his or her, or their safety or good.
By the eighth clause he nominated his two brothers, John and Alphonso Andrews, and his friend Spotswood H.. Hatcher, to be his executors.
At the time of testator’s death he had but one child — after his death his wife was delivered of another. One of them died in April, 1860, and the other in October, 1860. The widow of testator was about twenty-five years of age when he died.
"We recognize the duty which devolves upon us *11 to ascertain and carry ont tlie intention of the testator, as we are enabled to discover it in the language employed by him, looking at all the clauses of his will, and bearing in mind that the law presumes, that he did not intend to die intestate as to any portion of his estate.
But if, after a careful scrutiny of all the provisions of the will, giving to his language its natural and usual interpretation, we are forced to the conclusion, that he has overlooked contingencies on the happening or not happening of which, he has failed to dispose of all or a portion of his estate, we are bound so to declare, although in so doing we have to disregard the presumption that a testator intends to die intestate as to none of his estate.
Our duty is ended when we ascertain what the testator’s will, as written is; what he has omitted to provide for by oversight or through ignorance, we have no power to supply. Our business is to construe what the testator has written down and published as his will; not to make for him a will.
The main controversy in the case is, as to the true meaning and the legal effect ■ of the language of the fourth clause of the will. But it is right and proper, that in construing this clause, we gather all the help we can from the other clauses. Looking at the will as a whole, it is manifest that the prominent and primary object of the testator was to dedicate his entire estate to the support and maintenance of his child or children, if the income *12 of tbe whole should be deemed necessary and proper by his executors to accomplish that purpose; and after these objects should be accomplished, he desired any balance of the income or proceeds to be paid to his beloved wife.
To provide for her, at least as long as he should have a child living, seems to have been a matter of secondary interest to him.
These being the testator’s primary and secondary objects, we must look to the specific directions given for the effectuation of his desires.
By the third clause the testator makes provision for the support, maintenance, and education of his child or children, by directing his executors to appropriate as much of the'yearly income of his entire estate, as they may think proper and necessary, and the balance they are to pay to his wife during her life or widowhood.
He vests the legal title to his entire estate in his executors as trustees, for the benefit of his child or children, and of his wife. The equitable title, which is the real ownership of the estate, is in his child or children, and wife; but his wife’s interest is to terminate with her life or upon her marriage. This is the general provision of the will. But the testator then proceeds to regulate his estate to suit certain contingencies: The first is, if his wife should die or marry, his child or children being alive. In that contingency he provides that the whole of said estate and income is to vest immediately in ’his child or children. It is clear, that upon the hap *13 pening of tbat contingency, or more properly, of either the contingencies of death or marriage, he intended his wife to have nothing.
The testator then proceeds, in the fourth clause, to provide for a second contingency, that is, if any child or children of his should die under twenty years of age, leaving no child or children, or the descendants of such, and his wife be married or dead, the entire interest of such child to go to his or her surviving brother or sister. It is obvious that the testator is here only carrying out the general provision made to meet the first contingency— the death or marriage of his wife in the life-time of his child or children. Assuming her death or marriage, he is providing for the disposition of the estate, if one of his children should die — in that event the whole estate goes to the survivor.
He then proceeds to another contingency — that is, if there be no brother or sister, nor the descendants of such, then his entire estate to go back to his brothers and sisters.
This provision, like the former, goes upon the assumption that his wife is dead or married. Here the testator stops short.
The contingency of the death of his child or children, leaving his wife living, and unmarried, seems not to have occurred to him; or, if it did, he omitted to provide for it, either by inadvertence or by design.
The contingency which he thus omitted has occurred. Both of his children have died, leaving *14 their mother surviving. "We search in vain through the will for any language, which by express words, or by implication, disposes of the estate upon the happening of this contingency. We find ample evidence of his anxious care in providing for his children, both whilst their mother might be living and after her death or marriage — we see clearly that he intended the estate to go to his brother and sister in the event of the death of the children, their mother being either dead or married. But we can find no indication that he intended to make any disposition of his estate in the event of his widow out-living his children, unmarried. We have no alternative but to presume that the testator omitted, by oversight, to provide for this contingency, and to assume the power of supplying the omission; or we must conclude that the children died intestate, and that their estate must be governed by the laws of descent and distribution.
But it is insisted with much earnestness and ingenuity for defendants, that the words in the fourth clause, “and my wife be dead or married,” is not a condition or contingency upon which the vesting of the remainder, or the limitation over, in favor either of the surviving child or the ultimate de-visees depended, but only a demonstration of the period at which the estate should take effect in possession to the remaindermen.
It may be conceded that many cases are to be found in the books in which expressions similar to this have been construed, not as conditions upon *15 which the ultimate estate depended, but demonstrations of the time at which the estate took effect in possession. But the construction of the words in all such cases must be governed by their collocation in the clause in which they occur, and their connection with and relation to other language employed. In the case before us, the words “ my wife be married or dead,” are connected with the preceding sentence by the copulative conjunction, and that sentence contains an express condition or contingency — “if any child should die under twenty years of age, and my wife be married or dead” — implying and meaning by necessary grammatical construction, that the same condition or contingency is annexed to the latter as to the former member of the sentence — -just as if it read: “ If any child should die under twenty years of age, and if my wife should be married or dead,” when such child died, then, and in that case, the testator intended his entire estate to go first to his surviving child, and next to his brother and sister. We are, therefore, forced by the plain and unambiguous language used, interpreted upon the fixed rules of construction to regard the words “ and my wife be married or dead,” as containing a condition or contingency on which the remainders are made to depend. The conditions or contingencies specified in the clause not having occurred and concurred, the remainders over necessarily fail, and the estate, must be governed by the statutes of distribution and descent.
*16 The decree of the Chancellor will be modified in accordance with this opinion, and the cause be remanded for such other proceedings as may be proper in the case. The cost of this Court will be paid by the executors.